

ALLIANCE DEFENDING
FREEDOM

FOR FAITH. FOR JUSTICE.

July 25, 2025

**_Via Electronic Mail_**
Mr. Elliot Field
Garrett Hemann Robertson P.C.
P.O. Box 749
Salem, Oregon 97308-0749
efield@ghrlawyers.com

>   ***Re:    Mr. Roderick Theis' Response to May Bias Incident Complaints and IMESD's Investigation***

Dear Mr. Field,

As you know, the InterMountain Education Service District ("IMESD") has launched another bias incident investigation against Mr. Theis under Board Policies ACB and ACB-AR for three complaints filed against him in May. We write to insist that IMESD immediately halt the investigation against Mr. Theis and dismiss the complaints as they represent retaliation for exercising his First Amendment rights. Because Mr. Theis and IMESD are actively engaged in litigation over the interpretation of Policy ACB, to have Mr. Theis meet with the investigator would provide IMESD an opportunity to collect extrajudicial discovery. This would not be appropriate. We do, however, also write to respond to the numerous false allegations contained in the complaints.

### FACTUAL BACKGROUND

**Mr. Theis files his First Amendment lawsuit against IMESD on May 21, 2025.**

On May 21, 2025, Mr. Theis filed his Verified Complaint against IMESD, Case No. 2:25-cv-00865-HL, in the United States District Court for the District of Oregon. The lawsuit challenges, among other things, the overbreadth of Policies ACB and ACB-AR which prohibit Mr. Theis from promoting a "binary view of gender" anywhere and at anytime in violation of his First Amendment right to speak in his personal capacity on matters of public concern. The lawsuit remains in active litigation.

**The next day, Taia Young files a bias incident complaint against Mr. Theis.**

On May 22, 2025, the day after Mr. Theis filed his lawsuit, Taia Young, an IMESD school psychologist, filed a bias incident complaint with IMESD. The basis for Ms. Young's is an April 2 personal text conversation with Mr. Theis. This is over *seven weeks* before she filed her complaint. The complaint itself primarily concerns what Ms. Young characterizes as Mr. Theis' "anti-trans" views which "direct[ly] conflict with [her] own." In her May 22 email to Gretchen McKay, Ms. Young admits that she filed her complaint in coordination with others. Ms. Young states that she spoke with "other colleagues" about Mr. Theis and her complaint. She further states that she was "hopeful that they will also file a complaint" against Mr. Theis. These facts demonstrate that Ms. Young filed her complaint purely in response to Mr. Theis' lawsuit.

Ms. Young accuses Mr. Theis of sending her "anti-trans text messages" and based on this ascribes to Mr. Theis a vague "agenda [that] goes beyond just expressing his beliefs." Ms. Young, however, conveniently omits that she *solicited* Mr. Theis' opinions on gender identity, the display of the books *He is He* and *She is She* in his office, and IMESD's directive that he remove the books.

**Theis Decl. Ex. 05 at 001**

Ms. Young, not Mr. Theis, began the text conversation by asking him: "Is that what your books were about? Lack of discrimination?" *See* April 2, 2025 Text Thread Between Taia Young and Rod Theis at 1. She then followed up: "[The books] aren't neutral and you wouldn't like me sharing pro trans propaganda with children would you?" *Id.* at 2. But according to Superintendent Mark Mulvihill, Policy ACB *allows* "pro trans propaganda" but not messages promoting a "binary view of gender." *See* Pl.'s Verified Compl. Ex. H at 1 ("[P]romot[ing] a binary view of gender ... excludes and invalidates an understanding of gender diversity ... communicates a message of exclusion and diminishes the validity of non-binary and transgender experiences," and "contributes to an unwelcoming environment, which directly contradicts IMESD's *commitment to inclusivity and diversity*.") (emphasis added).

Later, Ms. Young's questioning called for Mr. Theis' views on a host of other subjects, including her child's gender identity, President Trump's executive orders, government corruption, women's right to vote, and even "biracial" marriage. *See* Text Thread at 8, 16—23. The conversation eventually ended when Mr. Theis cut it off. *Id.* at 28. Mr. Theis respectfully responded to all of her questions and at no time engaged in any behavior which violated Policy ACB. As Mr. Theis explained to Ms. Young, throughout this conversation, he was "simply telling [Ms. Young] what [he] think[s] generally about the subjects" that *Ms. Young* was "asking [him] about." *Id.* at 15.

While Ms. Young claims in her complaint that she felt "concerned," "worr[ied]," and "very uneasy" by Mr. Theis following this conversation, she later texted Mr. Theis again to ask about the results of IMESD's investigation into his display of his books. *Id.* at 29. Both of these conversations were unrelated to his job duties.

**Rachael Oliver files a complaint against Mr. Theis two days after his lawsuit.**

On May 23, 2025, just two days after Mr. Theis filed his lawsuit, Rachael Oliver, a La Grande Middle School ("LGMS") special education teacher, filed a complaint with IMESD against Mr. Theis. Although Ms. Oliver does not supervise Mr. Theis or his work in any capacity, she presumes to pass judgment on his work and his professionalism. Ms. Oliver's complaint claimed Mr. Theis has an "inability to remain professional," an "inability to communicate professionally with parents," and by accusing him of "overstep[ping] his professional role regularly[.]" Yet Ms. Oliver's complaint fails to provide any support for these allegations beyond the one May 21 meeting she recounts in her complaint.

All of Mr. Theis' comments made during the meeting in regard to the student's level of emotional distress were for the legitimate purpose of aiding the team in understanding her needs in the school environment. Mr. Theis denies stating that LGMS needed to provide the student "day treatment level care." Rather, based on Mr. Theis' observations and the information presented to him about the student, Mr. Theis commented that the student's behavior during the meeting, when combined with the results from the evaluation, was suggestive of a student that may need this higher level of care if LGMS could not find another way to successfully serve her. Mr. Theis did not commit LGMS, either verbally or in writing, to provide that level of care, or any level of care or particular intervention, for that student.

Ms. Oliver only alleges that, in her opinion, she "felt" Mr. Theis' statements "were way out of line considering he doesn't know the student," and that she disagreed with Mr. Theis' evaluation of the student's needs. Her grievance is nothing more than a professional disagreement. According to Mr. Theis, neither Ms. Oliver nor any other staff member raised these concerns with him after the meeting.

Other than this complaint and the complaint by an LGMS employee about Mr. Theis' display of the books (which are currently the subject of litigation), Mr. Theis is unaware of

**Theis Decl. Ex. 05 at 002**

any other "report[s]" about him to Mr. Wagner mentioned in Ms. Oliver's complaint. Nor has Mr. Theis' professionalism ever been "addressed" by Mr. Wagner.

Ms. Oliver's complaints about Mr. Theis' professionalism are also inconsistent with her previous interactions with him. According to Mr. Theis, the 2024-25 school year was Ms. Oliver's first year at LGMS. During that time, Mr. Theis believes that they had a positive working relationship. Ms. Oliver sought Mr. Theis' guidance and consultation on multiple occasions, which suggests that she valued his input. For example, during an initial eligibility meeting with a student and parent on May 23, Ms. Oliver, who was the case manager, and Mr. Theis, who had played a significant role in the case, worked together with other staff members to create a support plan for the student. After another meeting on May 14 involving Ms. Oliver, Mr. Theis, LGMS Principal Chris Wagner, and a student's parent, both Mr. Wagner *and* Ms. Oliver told Mr. Theis that they appreciated his contributions during the meeting.

Finally, Mr. Wagner has only ever commended Mr. Theis' contributions during meetings with LGMS students or parents and has made clear to Mr. Theis on several occasions during the 2023-24 and 2024-25 school years that he and the LGMS staff appreciate his insight, care, and guidance. In addition to the lack of evidence that any policy was actually violated, this information suggests that this complaint was also made in response to the current litigation.

**Liz Durant files a bias incident complaint against Mr. Theis because of his lawsuit.**

On May 30, 2025, Liz Durant, an IMESD school psychologist, filed a bias incident complaint with IMESD against Mr. Theis. Ms. Durant's complaint concerned a personal conversation between her and Plaintiff from January 17, 2025, over *four months* before the complaint was filed. Ms. Durant admitted she initially did not think she needed to report the conversation to IMESD officials. But she changed her mind only after "Rod's lawsuit against the ESD became public." Ms. Durant also admitted she filed her complaint after coordinating with Ms. Young.

Ms. Durant stated that the conversation was "private" and took place after a work-related meeting. Therefore, the conversation happened on their own time. It also did not concern their work-related duties. Mr. Theis sought Ms. Durant's advice regarding the Eastern Washington University School Psychologist Licensure program to which he had applied and she had recently completed.

Ms. Durant's sole allegation is that Mr. Theis said, "As long as I don't have to deal with any of that transgender stuff." Ms. Durant felt this comment indicated that Mr. Theis harbored an "anti-transgender attitude and prejudice." Mr. Theis denies making that statement and Mr. Theis does not hold any prejudice towards transgender individuals. Mr. Theis values and respects all of his coworkers and the students he works with.

Ms. Durant claims this comment violates Policy ACB because it "could have been hurtful to someone who is transgender themselves or has a close friend or family member who is transgender" had he or she heard the comment. But Ms. Durant admitted that no one else was in the room or even the building to overhear the conversation. She further explains that she filed the complaint because, in her mind, "[w]hen Rod outwardly demonstrates his anti-transgender beliefs and sentiments, he is doing harm." His comment clearly violated no Policy.

**IMESD delays informing Mr. Theis of the complaints.**

Board Policy ACB-AR requires IMESD officials to "make a decision determine [sic] responsibility within 10 working days of receiving the complaint." IMESD received complaints on May 22, 23, and 30. Yet, in violation of its policy, IMESD failed to inform Mr.

**Theis Decl. Ex. 05 at 003**

Theis about them until July 14, seven weeks later. Only then did IMESD tell Mr. Theis that he would be required to sit for an interview with an investigator.

LEGAL ANALYSIS

The allegations on their face cannot be violations of Policy ACB and they are retaliatory. IMESD has also failed to abide by its own policy in handling these complaints. Therefore, IMESD should immediately halt this investigation and dismiss the complaints.

**IMESD's investigation against Mr. Theis violates the First Amendment.**

IMESD's investigation of the complaints violate Mr. Theis' First Amendment rights for two reasons. First, the complaints and the investigation are unlawful retaliation for Mr. Theis' filing of his First Amendment lawsuit against IMESD. Second, launching a baseless investigation into Mr. Theis for simply expressing his religious views as a private citizen on a matter of public concern is an adverse employment action that represents clear viewpoint discrimination and chills his speech by threatening punishment.

1. **The investigation is First Amendment retaliation against Mr. Theis for filing his lawsuit.**

The First Amendment provides that "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend. I. "The right to petition the government extends to the courts and, thus, includes the right to file certain lawsuits." *Prime Healthcare Servs., Inc. v. Servs. Emps. Int'l Union*, 97 F. Supp. 3d 1169, 1196 (S.D. Cal. 2015) (citing *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002)).

The Ninth Circuit has held that the First Amendment "prevent[s] ... actions by a government employer that 'chill the exercise of protected' First Amendment rights." *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir.2003). Action that are "reasonably likely to deter employees from engaging in protected activity" violate the First Amendment. *Id.* at 976 (holding that "if the plaintiffs in this case can establish that the actions taken by the defendants were 'reasonably likely to deter [them] from engaging in protected activity [under the First Amendment],' they will have established a valid claim under § 1983"). Here, the admissions of the complainants and the timing of the complaints demonstrate that they were filed in response to Mr. Theis' lawsuit against IMESD. IMESD's acceptance of the complaints and its decision to subject Mr. Theis to a Policy ACB investigation, for which he has been previously threatened with discipline and termination, are actions that are reasonably likely to deter Mr. Theis and other employees from petitioning the courts for redress of grievances against their employer. Thus, the investigation under the specter of discipline has a chilling effect on employee speech. It should be terminated.

2. **The investigation is First Amendment retaliation against Mr. Theis for speaking as a private citizen on a matter of public concern.**

When Mr. Theis engaged in private conversations with Ms. Young and Ms. Durant about his religious views on gender identity, he engaged in speech protected by the First Amendment because he "spoke on a matter of public concern," and he "spoke as a private citizen[.]" *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 777 (9th Cir. 2022) (citation modified) (holding that employee spoke on a matter of public concern in "a teacher-only training with a limited audience.") By launching an investigation into complaints based on those conversations, IMESD took an adverse employment action against him because of that speech. *See Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 n.1 (9th Cir. 2010) (a retaliatory activity is one that "would 'chill or silence a person of ordinary firmness' from continuing to speak out."); *Mulligan v. Nichols*, 835 F.3d 983, 989 n.5 (9th Cir. 2016) (employment actions that may have impermissible chilling effect include "[i]nformal measures, such as 'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation.'")

Page **4** of **6**

**Theis Decl. Ex. 05 at 004**

IMESD cannot demonstrate that it has a legitimate administrative interest in suppressing the speech that outweighed the plaintiff's First Amendment rights. *See Dodge*, 56 F.4th 767, 776–77 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

### a.  Mr. Theis spoke as a private citizen on a matter of public concern.

IMESD must show greater disruption because Mr. Theis' speech involved significant topics of public concern. *Rankin v. McPherson*, 483 U.S. 378 (1987); *Lane v. Franks*, 573 U.S. 228, 242 (2014). When speaking to his colleagues, Mr. Theis was not speaking as an IMESD education specialist. Having private conversations with them unrelated to work is not part of his job duties. What's more, Mr. Theis spoke on a matter of public concern. He discussed with Ms. Young and Ms. Durant his beliefs on gender identity, which the Supreme Court has said is "undoubtedly [a] matter[ ] of profound 'value and concern to the public.'" *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 138 S. Ct. 2448, 2476 (2018).

Mr. Theis engaged in private conversations unrelated to his job duties. The First Amendment is more likely to protect "[e]mployee speech which transpires entirely on the employee's own time, and in non-work areas of the office." *Connick, v. Myers*, 461 U.S. 138, 153 n.13 (1983); *see also Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 726 (9th Cir. 2022) ("[W]e give less weight to the government's concerns about the disruptive impact of speech outside the workplace context."). Mr. Theis' conversation with Ms. Young took place over personal text. Mr. Theis' conversation with Ms. Durant took place during the brief period after a work-related meeting had ended. The First Amendment protects this speech.

### b.  IMESD's investigation and its implicit threat of punishment chills speech.

IMESD's decision to investigate Mr. Theis because of his protected speech constitutes an injury under the First Amendment. The Supreme Court has recognized that "constitutional violations [can] arise from the deterrent, or 'chilling,' effect of governmental regulations." *Laird v. Tatum*, 408 U.S. 1, 11 (1972). "[T]he threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation" may cause self-censorship in violation of the First Amendment just as acutely as a direct bar on speech. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963). Thus, individuals suffer an injury to their First Amendment rights even when the government has simply "chilled" the right to engage in free speech and expression. *See Blair*, 608 F.3d at 543 n.1; *Mulligan*, 835 F.3d at 989 n.5.

Here, IMESD has previously threatened Mr. Theis that "further conduct" promoting a "binary view of gender" would result in "discipline," including "termination." Pl.'s Verified Compl. ¶ 161. "It is hardly controversial that threatening a subordinate's employment if they do not stop engaging in protected speech is reasonably likely to deter that person from speaking." *Dodge*, 56 F.4th at 779 (citing *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1079 (9th Cir. 2013)). "The power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat." *Brodheim*, 584 F.3d at 1271. By accepting and deciding to investigate the complaints, which essentially just allege that Mr. Theis promoted a binary view of gender in private conversations, IMESD has signaled that Policy ACB does in fact prohibit all speech by its employees that promotes a binary view of gender at all times on pain of discipline or termination.

Additionally, the investigation itself is entirely unnecessary. IMESD knows exactly what Mr. Theis said to Ms. Young and the context of the remarks. The statement Ms. Durant accuses Mr. Theis of making is protected speech and cannot be a violation of Policy ACB lest IMESD violate the First Amendment. The only possible reason to subject Mr. Theis to an interrogation is to intimidate him and punish him for engaging in protected speech. The First

**Theis Decl. Ex. 05 at 005**

Amendment prohibits the government from retaliating against individuals for engaging in protected speech.

### c. Disagreement is not disruption.

IMESD cannot meet its burden to show disruption here. Ms. Young claims she felt "concerned," "worr[ied]," and "very uneasy" after asking Mr. Theis about his views. Similarly, Ms. Durant claims Mr. Theis' comment violates Policy ACB because she felt "could have been hurtful to someone who is transgender themselves or has a close friend or family member who is transgender" had he or she heard the comment. But any feelings from speech, such as feeling "outraged," "upset," "angry," "intimidated," and "frustrated" all show that the "only disruption was the effect controversial speech [had] on those who disagree with it." *Dodge*, 56 F.4th 767, 786 (9th Cir. 2022). Our diverse society expects coworkers to be able to work together even if they may disagree on a certain issue. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 541 (2022) ("[L]earning how to tolerate speech … of all kinds is 'part of learning how to live in a pluralistic society,' a trait of character essential to a 'tolerant citizenry.'")

*Dodge* controls here. In that case, the Court concluded that, "while some [coworkers] may have been outraged or offended by Dodge's political expression, no evidence of actual or tangible disruption to school operations has been presented." 56 F.4th at 783. So too must complainant's and IMESD's attempt here to silence Mr. Theis' respectful and protected speech to "creat[e] a safe place" and ensure "inclusivity and tolerance" fail. *Id.* at 786. Simply put, IMESD cannot sanction or threaten to punish Mr. Theis for engaging in these private conversations about gender identity because "*Pickering*, *Tinker*, and *Settlegoode*, along with several other cases, clearly establish that disagreement with a disfavored political stance or controversial viewpoint, by itself, is not a valid reason to curtail expression of that viewpoint at a public school. Moreover, these cases each considered restrictions on disfavored or unpopular speech in the name of preventing disruption, when the only disruption was the effect controversial speech has on those who disagree with it because they disagree with it." *Id.*

### IMESD violated its own policy.

IMESD's failure to inform Mr. Theis "within 10 working days of receiving the complaint" is yet another reason why the investigation should be terminated. Additionally, Mr. Theis' speech did not disrupt IMESD's ability to deliver its services.

### CONCLUSION

Mr. Theis' private conversations do not and cannot violate Policy ACB lest the policy violate the First Amendment. That should be the end of this inquiry. Therefore, IMESD should dismiss the complaints and terminate the investigation against Mr. Theis.

Respectfully Submitted,

s/*Tyson C. Langhofer*
Tyson C. Langhofer
Director of ADF Center for Academic Freedom
ALLIANCE DEFENDING FREEDOM
Counsel for Roderick Theis

cc (via electronic mail):
- Mr. Matthew C. Ray, Legal Counsel, ADF Center for Academic Freedom, mray@ADFlegal.org.
- Ms. Rebekah Schultheiss, Esq., rebekah@millardoffices.com.

**Theis Decl. Ex. 05 at 006**