**Rod Theis <psalmsman@gmail.com>**

---

**Written Response to Pre-Termination Letters**
1 message

---

**Rod Theis** <psalmsman@gmail.com>                                    Fri, Nov 7, 2025 at 4:48 PM
To: "mark.mulvihill@imesd.k12.or.us" <mark.mulvihill@imesd.k12.or.us>
Cc: danielle.sackett@imesd.k12.or.us

Hi Mark,

Please see my written responses to the October 31st pre-termination letter from Aimee VanNice and your clarification of dates/concerns on November 5th referenced from the original October 31st letter.

Thank you,

Rod Theis

---

📄 **Theis Responses to October 31 and November 5 Pretermination Letters 11 07 25.pdf**
649K

**Theis Decl. Ex. 21 at 001**

Date:  November 7, 2025

Rod Theis Responses to October 31 & November 5, 2025, Pre-Termination Letters:

1. **"Inability to perform your responsibilities and essential functions."**
   a. **"LGSD becomes the sixth school district served by IMESD that declines to have you provide services to its school children."**

I am aware of only 2 formal requests for nonplacement – Elgin & La Grande. Both were based on unsubstantiated information and after a history of successful placement of me in those districts for multiple years. I dispute La Grande's request as improper. It was based on a misreading of the court order in my lawsuit against IMESD and a retaliatory complaint from and set up by Rachael Oliver who has repeatedly demonstrated animus against me.

It is inappropriate to characterize my departure from Umatilla School District as a request for nonplacement because the move was made "for my own safety" in November 2017 when the superintendent of that district targeted me for a refusal to say false things in my assessment report regarding a student that she was inappropriately targeting. So my inability to be placed in Umatilla is because the superintendent who targeted me for harm still holds that position in that district – nonplacement is for my protection, not because of request for nonplacement due to inappropriate behavior. Further, the IMESD HR director and my supervisor at that time both repeatedly encouraged me to not pursue accountability for the superintendent's inappropriate behavior, but to rather just walk away and let it go. Otherwise I have only ever had a history of successful placement in Umatilla.

Although my supervisor has previously claimed that Pendleton and Milton-Freewater school districts made nonplacement requests, she has never provided evidence to support these claims, despite multiple requests for her to do so. I also have evidence to the contrary regarding how those districts perceive my conduct and service. A Pendleton administrator and case manager are willing to vouch for my conduct as a parent in that district. I have positive written statements from two administrators and a case manager in Milton-Freewater regarding my professional conduct there. And there is no indication that there were any lingering concerns from Milton-Freewater evident in my final year of service there (2020-21).  Therefore, my supervisor's claims should be dismissed as unsubstantiated.

Finally, I have been provided no notice or even the name of a sixth school district that has allegedly requested nonplacement. I have a well-documented history of successful placement in all of the districts to which I have been placed previously, which can be evidenced by my annual performance reviews and letters of recommendation from those I have worked with.

**Theis Decl. Ex. 21 at 002**

IMESD provides school psychology & behavior services to 17 component school districts, of which I have successfully served with positive report in all 12 of the districts that I have been placed (including letters of recommendation from administrators or special education teachers from six of them – Pilot Rock, Milton-Freewater, Athena-Weston, Helix, Elgin and Union), and I have never served the other five.  There is no reason to suggest that I cannot be placed in any number of school districts to complete essential job functions for which I have a history of good performance and for which there is no request for nonplacement. Even if the IMESD were to determine that I am not appropriate to be placed in any of the 5 districts, or mysterious 6th one of which I am unaware, this leaves 13 districts that I can very reasonably be assigned to – Pilot Rock, Echo, Stanfield, Helix, Athena-Weston, Ukiah, Ione, Imbler, Union, Morrow County, North Powder and Burnt River.

2. **"Inability to create a positive work environment."**
   a. **Remarks to volunteer ambassadors**

None of the four volunteers, when questioned, stated that they were uncomfortable during their time in my office space and their reading of the books.

Further, LGMS overtly and pervasively encourages students to read books that include themes of violence and assault, including sexual assault. For example, *The Hunger Games* is a Young Adult rated book that is a part of the 6th grade curriculum for all students, and it is promoted in the 7th & 8th grade math classroom and the school's library, and this series of books includes the noted themes of assault, murder, and sexual assault. Further, the school counselor for the middle school also notes that lessons on healthy boundaries and sexual consent are given to 6th, 7th and 8th graders, and that the topic of rape is briefly covered as part of these lessons – with the goal of awareness. The counselors do also address the subject of rape with students individually when the subject is brought up by these students within the school environment. My brief clarifying comment about the *He is He* author's background to teenage volunteers who were accessing the books of their own accord and in a school environment that had exposed them to themes of sexual assault in their previous classes, should not be characterized as somehow rendering me unable to create a positive environment.

   b. **Concerns about professionalism.**

I respond to each of the dates and concerns listed in Superintendent Mulvihill's November 5 letter below:

<u>October 14, 2015</u> – I cannot find anything in my personnel file regarding this date, and I do not recall anything from memory regarding any sort of concern communicated to me at that time. I was not assigned to Milton-Freewater until November 2017, and the stated concerns here

**Theis Decl. Ex. 21 at 003**

appear to be reflective of those noted for the February 20/March 22, 2018 letter of concerns addressed below. Upon information and belief, this date and concern must be an error.

February 20 & March 22, 2018 – These dates refer to the same concern, which I have provided a thorough written response to already, dated October 9, 2024, and located in my personnel file. Further, in my end of year performance review for 2017-18, my supervisor clearly writes that these concerns were addressed and resolved (Dated June 4, 2018).  Listing them twice, as if they were separate concerns is inappropriate.  And the noted resolution of the concerns is also significant, because those concerns were put to rest and have not resurfaced.

May 16, 2019 – This refers to an email that was inappropriately placed into my file, since I was not notified of this email or its placement into my file.  I provided a written response to it on October 10, 2024 (after discovering its existence), and this is located in my personnel file.  I object to any reference to this email in any form of discipline as a violation of my due process rights.

January 6, May 10, 2022 – This situation was resolved in my favor, and it was determined that I did not do anything inappropriate on these dates. It involved a La Grande School District 5th grade teacher inappropriately targeting/harassing me in the school environment for not wearing a mask (I had a mask exception) and my attempts to seek resolution to her concerns and behavior. I did not do anything inappropriate on these dates, which was verified by an IMESD investigation in response to a retaliatory complaint filed by the teacher on May 17, 2022, and written in a summary letter dated June 6, 2022, by Jon Peterson, which can be located in my personnel file. When I sought resolution with the La Grande School District in early May 2022, they determined that the teacher's behavior was inappropriate and we were required to not engage in any communication with each other (verbal or written) for the remainder of the school year (see letter provided by LGSD as an attachment to their September 18, 2025, findings).  These dates do not reflect that I was determined to have demonstrated inappropriate or unprofessional behavior, and did not result in a directive to me.

May 23, 2022 – My written response on June 3 (signed June 7th), 2022, is relevant to this directive. I merely expressed my concerns to my supervisor regarding Aimee's behavior toward me. I was not "calling [her] names." Providing honest feedback to my supervisor regarding my concerns and her conduct toward me should not be deemed unprofessional and inappropriate. In fact, Superintendent Mulvihill had previously informed me in writing that he expected IMESD employees to address any concerns with their immediate supervisors first. This is all I attempted to do.

This 2021-22 year was a significantly stressful and traumatic year, during which I had reported a concern of hostile work environment and had appealed the concern to the IMESD Board, and

**Theis Decl. Ex. 21 at 004**

faced constant obstacles regarding my efforts to seek resolution to these problems from both Aimee and Gretchen.  This letter of directive is nothing short of harassment, essentially telling me to shut up.  And the summer hours she keeps referring to is in regard to my request for a reduced 0.8 (4-day/week) contract for the 2022-23 schoolyear, due to the extreme stress/trauma experienced during the 2021-22 contract year.  I had made it clear to Gretchen that I would not sign a full 1.0 (5-day/week) contract.  It was only when I went to Jon Peterson, who was at that time the Assistant Superintendent, and whom I only interacted with because of the investigation he was doing (see June 6, 2022, letter in my file), that my concern was validated and I was offered the reduced contract. Finally, at no point did anyone inform me that I could file a KL-AR complaint regarding the inappropriate behavior of either Aimee or Gretchen.

June 1, 2022 – This relates to comments in my end of year performance review by my supervisor which is dated June 1, 2022.  Although there are many positive statements regarding my professionalism from the district, including "*Rod has been a tremendous asset to our staff. His efficiency within the process for students needing specialized service is incredible and he provides feedback that is easy to understand.  His reports are concise, and the team welcomes his input at meetings. The quality for reports are high, and he is always an advocate for what is best for kids.*"; I provided a written response, dated June 3 (signed June 7th), 2022, to other concerns noted by Gretchen in the end-of-year performance review and located in my personnel file.  This written response also addresses the situation with the La Grande teacher targeting me as well.  I will further note that Gretchen informed me at that time that Ukiah School district was requesting for me to again serve them the next year, indicating that any apparent concerns had been resolved.

June 2024 – I have reviewed in full my end-of-year summative evaluation to find what is being referenced here, and the comment referenced pertains to an IMESD Business Office employee (NOT Elgin or any district I was assigned to), and this situation was quickly resolved and I have maintained a positive working relationship with that employee. My evaluation also rates me as "proficient" to "exemplary" in all areas of evaluation, with many positive comments, including navigating difficult situations well and resolving any concerns noted. I had a consistent history of positive working relationships when I worked in Elgin.  Multiple letters of reference from staff in Elgin speak to my professional conduct there.

October 30, 2024 – I have a good professional relationship with this staff person, as we have continued to have many more interactions as he has continued to the primary support staff for I.T. services for our department at IMESD. My interview responses and my response to my latest performance evaluation which also referenced this incident reveal that my comment was not negative or directed at this person. I was not found to have done anything wrong. Again, I continue to maintain a positive working relationship with this coworker.

**Theis Decl. Ex. 21 at 005**

<u>December 3, 2024</u> – This refers to the new Elgin superintendent, whom I met privately with in her office and conversed about a special education teacher position in an attempt to be helpful to the district. When she had told me directly that she didn't think my comment was appropriate, I immediately apologized and redirected. She never expressed any other concern directly with me, either before or after this situation.

<u>May 23, 2025</u> – I have already written several responses to this complaint. Rachael Oliver has demonstrated an animus against me and a determination to see me removed from my position. This brings her credibility into question. Neither she nor anyone else ever approached me expressing concerns about my contributions to the meeting at issue.

Theis Decl. Ex. 21 at 006