IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| RODERICK E. THEIS, II, an individual, | No. 2:25-cv-00865-HL |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| INTERMOUNTAIN EDUCATION SERVICE BOARD OF DIRECTORS, MARK S. MULVIHILL, and AIMEE VANNICE | |
| Defendants. | |

Plaintiff Roderick Theis brings this action against Defendants Intermountain Education Service District ("IMESD") Board of Directors; Mark Mulvihill, Superintendent; and Aimee VanNice, Assistant Superintendent and Director of Human Resources. Now before the Court is Plaintiff's Motion to Enforce this Court's Preliminary Injunction. Mot., ECF 46. Plaintiff asserts that he is facing discipline for displaying two books, which he alleges violates this Court's Preliminary Injunction. *Id.* at 1–2. Because Plaintiff has failed to demonstrate by clear and convincing evidence that Defendants violated the Preliminary Injunction, and because his display of the books to students was not protected speech, Plaintiff's Motion is DENIED.

1 – OPINION & ORDER

BACKGROUND

I.  **The Complaint and initial proceedings.**[1]

Plaintiff worked as a licensed clinical social worker for IMESD. Compl. ¶ 47, ECF 1. Plaintiff was disciplined for—and prevented from—displaying two books in his office in La Grande Middle School ("LGMS"): *He Is He* and *She Is She*. *Id.* at ¶¶ 73, 101, 104–05, 156–62. Plaintiff had also displayed another book, *Johnny the Walrus*, in a different school office and had summarized and discussed the book with a student who asked about it. *Id.* at ¶ 129. IMESD's investigation found that Plaintiff's display of *He Is He* and *She Is She* constituted a bias incident because the books "promote a binary view of gender, which excludes and invalidates an understanding of gender diversity and transgender students, staff, and others." Ex. H 1, ECF 1-8. Plaintiff was prohibited from displaying those books in his offices and faced further punishment if he continued displaying them. Compl. ¶¶ 24, 26.

Plaintiff filed the underlying Complaint on May 21, 2025, Compl., and he filed a Motion for Preliminary Injunction on May 29, 2025, Mot. for Prelim. Inj. ("MPI"), ECF 12. Plaintiff alleged, *inter alia*, that IMESD's investigation and prohibition constituted retaliation based on his First Amendment right of freedom of speech. Compl. ¶¶ 232–42; MPI 28–37. He sought an injunction that (1) permitted him to resume displaying the books in the workplace and (2) required Defendants to remove any reference to the investigation from his records. MPI 2.

This Court granted in part and denied in part that Motion on August 20, 2025. Op. & Order, ECF 39.[2] This Court concluded that the blanket prohibition of the books violated

---

[1] Because the events underlying the Complaint are familiar to the Parties, the Court will discuss them only briefly for the purposes of resolving this Motion.

[2] This Court addressed each of Plaintiff's claims when evaluating his Motion for Preliminary Injunction. *See* Op. & Order 14–30. But it focused on the First Amendment retaliation claim after concluding that the relief he was entitled to under that claim was coextensive with the relief he

Plaintiff's rights under the First Amendment. *Id.* at 14–22. But the Order drew a critical distinction: Plaintiff's display of the books when the students he served were present was *not* protected speech, but displaying the books outside the presence of students *was* protected speech. *Id.* at 18–20. This Court explained that, when Plaintiff displayed the books "*while engaged in speech that IMESD paid him to produce* as an Education Specialist," he spoke as a public employee. *Id.* at 18–19 (emphasis in original). And because Plaintiff spoke as a public employee at those times, that speech was not entitled to First Amendment protection. *Id.* at 19–20. Conversely, when Plaintiff displayed the books when no students were present in his office, this Court concluded that he spoke as a private citizen, and his speech was entitled to First Amendment protection. *Id.* The Court noted that "Plaintiff's LGMS office had a 'Staff Only' sign, Compl. ¶ 7[0], and there is no identified risk that parents or students could enter the office without him present and view the display." Op. & Order 19. Thus, "[w]hen no students were present in Plaintiff's office, the message of the books would not be reasonably attributable to IMESD, and the display could not press Plaintiff's views on impressionable or captive students." *Id.* at 20.

The Court granted Plaintiff injunctive relief based on its determination of when he spoke as a public employee and when he spoke as a private citizen. *Id.* at 31–32. The Court granted "Plaintiff's request to resume displaying the books in his IMESD offices" with a limitation: that "he may only do so when no students are present." *Id.* at 32. And the Court established that "Defendants may not take disciplinary action against Plaintiff—related to displays of the

---

would be entitled to under any of the other claims on which he was likely to prevail. *Id.* at 23. Thus, this Opinion similarly focuses on Plaintiff's First Amendment retaliation claim and its threshold distinction—discussed below—between protected private speech and unprotected speech as a public employee.

3 – OPINION & ORDER

books—that is inconsistent with the relief granted by this Court." *Id.*; *see also id.* at 33 (enjoining Defendants "from taking disciplinary action against Plaintiff Roderick Theis if he chooses to resume displaying the books *He [I]s He*, *She [I]s She*, or *Johnny the Walrus* in any of his offices within the IMESD service area while the children that he serves are not present in those office spaces").[3]

## II. The incident and proceedings giving rise to Plaintiff's current Motion.[4]

"Two days after this Court entered its injunction, [Plaintiff] began displaying the books in his office, but only when the students he serves were not present." Mot. 8. "The next school day, four eighth-grade ambassadors" entered Plaintiff's office and asked to see *He Is He* and *She Is She*. *Id.* Those eighth graders had not yet started school; rather, they were there to "help younger students with their first day of classes." *Id.* But "at that moment, they had no responsibilities, were under nobody's authority, and were roaming the building." *Id.* at 8–9.

Plaintiff initially attempted to "redirect" the eighth graders' request to see the books displayed in his office. *Id.* at 9; *see also* Theis Decl. ¶¶ 78–79, ECF 48. He asked who they were, what their role in the ambassador program was, and whether they were being supervised. Theis Decl. ¶¶ 78–79. Plaintiff learned that the students did not have other responsibilities at that time "and that they were in [his] office by their own free will." *Id.* at ¶ 79. Plaintiff believed that—because he "was not working with the ambassadors in [his] official duties, they were not there in their roles as students, and they were free to leave [his] office at any time"—he would not violate

---

[3] Plaintiff appealed this Court's Preliminary Injunction, *see* Notice of Appeal, ECF 40, but the proceedings on appeal are not relevant to the disposition of this Motion.

[4] Because Defendants do not dispute Plaintiff's account of events, *see* Resp. 3–5, ECF 50 (relying on the events described in Plaintiff's Motion), the Court recites the facts alleged in Plaintiff's Motion and the underlying declaration and assumes that they are true for the purposes of deciding the Motion.

4 – OPINION & ORDER

the injunction if the "students succeeded in accessing [his] books." *Id.* at ¶ 80. The students then "grabbed *She Is She* and began reading it as a group just inside [his] office doorway." *Id.* at ¶ 81.

As the students were reading the book, an LGMS special education teacher walked by Plaintiff's office and recorded a video of the students reading the book. Mot. 5, 8–9; *see also* Ex. 17, ECF 49 (video recorded by the teacher). The students eventually left, but they returned to Plaintiff's office half an hour later. Mot. 9. They "grabbed *He Is He*[] and spent a few minutes reading it" despite Plaintiff not giving them permission to do so. Theis Decl. ¶¶ 85–86. During that second encounter, the students asked about the "books' reference to 'adoptedandloved.com.'" *Id.* at ¶ 88. Plaintiff explained the author's "appreciation for the value of adoption, as [the author's] mother had been raped and placed him for adoption." *Id.* And Plaintiff "indicated that [he] thought it was commendable that the author had founded this website as a way to help others." *Id.*

The LGMS special education teacher subsequently filed a complaint with IMESD against Plaintiff. Mot. 9. In the complaint, she stated that Plaintiff allowed eighth grade students to read the book *She Is She* "in his office in front of him," and she recorded a video of the incident. Theis Decl. Ex. 16 at 8, ECF 48-16. Based on the teacher's actions—walking by his room, recording the students reading the book, and filing a complaint—Plaintiff asserts that she "arranged [the] entire incident with the students." Mot. 9. Plaintiff suggests that "her video footage shows that she did not just happen upon the scene, as she would later claim, for the students reacted as if they expected her to be there." *Id.*

IMESD investigated the complaint against Plaintiff. Theis Decl. ¶¶ 90–94. The investigation concluded that Plaintiff violated IMESD policy and directives by displaying the

5 – OPINION & ORDER

books and that he "likely violated" the court order "indicating he may only display them when 'no students are present.'" Ex. 16 at 7.

On October 31, 2025, IMESD issued Plaintiff a pre-termination notice and placed him on paid administrative leave. Mot. 10; Theis Decl. ¶ 116. And on November 4, 2025, Defendants held a pre-termination meeting. Theis Decl. ¶ 118.

### III.    Plaintiff's Motion and the status of his employment with IMESD.

On November 13, 2025, Plaintiff filed this Motion to request "that this Court issue an order enforcing its injunction and stopping Defendants from firing him." Mot. 5. "[O]n December 6, Defendant Mulvihill informed [Plaintiff] that he is formally recommending IMESD terminate" him. Reply 1, ECF 51. "IMESD's Board will vote on this recommendation at its meeting on December 17." *Id.*

## STANDARDS

Fed. R. Civ. P. ("Rule") 62(d) "authorizes a district court to continue supervising compliance with the injunction" even after the underlying injunction is appealed. *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1099 (9th Cir. 2002) (discussing Rule 62).[5]

Courts are independently vested with power to enforce compliance with their lawful mandates. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (citing *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821)). "Courts thus have embraced an inherent contempt authority as a power 'necessary to the exercise of all others.'" *Id.* (internal citation omitted)

---

[5] Beyond citing Fed. R. Civ. P. 62, Plaintiff does not identify the basis for the Motion to Enforce, and he does not identify the standards under which it is evaluated. *See* Mot. 10–11. Defendants' Response also lacks such a discussion. *See* Resp. This Court will therefore construe Plaintiff's Motion as requesting that this Court rely on its inherent authority to enforce compliance with its order or—as is more common—as a motion to find Defendants in contempt of this Court's prior Opinion and Order. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2960 (3d ed. 2025) (discussing contempt when enforcing injunctions).

(quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)). A district court's authority to punish contempt is defined by federal statute, which provides that a court "shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority," including "disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3); *see also Don't Shoot Portland v. City of Portland*, 503 F. Supp. 3d 1022, 1031 (D. Or. 2020) (discussing that statute).

Courts have two categories of contempt powers: civil contempt and criminal contempt. *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016). "A court may wield its civil contempt powers for two separate and independent purposes: (1) 'to coerce the defendant into compliance with the court's order'; and (2) 'to compensate the complainant for losses sustained.'" *Id.* at 629 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)).

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (citation modified). When "'deciding whether an injunction has been violated it is proper to observe the objects for which the relief was granted and to find a breach of the decree in a violation of the *spirit* of the injunction, even though its strict letter may not have been disregarded.'" *Id.* at 949 (emphasis added) (quoting *John B. Stetson Co. v. Stephen L. Stetson Co.*, 128 F.2d 981, 983 (2d Cir. 1942)). Contempt "need not be willful," and there is no "'good faith' exception to the requirement of obedience to a court order." *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987). "But a person should not be held in contempt if his action appears to

7 – OPINION & ORDER

be based on a good faith and reasonable interpretation of the court's order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (citation modified).

The moving party has the burden to show that the "alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *Id.* Thus, to succeed, the movant must show that the alleged contemnor: "'(1) . . . violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence.'" *Lab./Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Tansp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (quoting *In re Dual-Deck*, 10 F.3d at 695).

## DISCUSSION

### I.    Plaintiff failed to establish that Defendants are violating the preliminary injunction.

Plaintiff's Motion—regardless of the framework under which it is analyzed—bears the burden of establishing, by clear and convincing evidence, that Defendants violated this Court's order by initiating disciplinary and termination proceedings against him due to his display of the books. This Court concludes that Plaintiff has failed to meet that threshold showing.

This Court's Order allowed Plaintiff to display the books but cautioned that "he may only do so when no students are present." Op. & Order 32 (detailing the scope of relief under the preliminary injunction). That distinction was based on this Court's conclusions about when his speech was entitled to First Amendment protection. *Id.* at 19–20. In turn, Defendants were enjoined from disciplining Plaintiff if he displayed the books in his office when no students were present. *Id.* at 32–33.

Plaintiff's two encounters with students were beyond the scope of this Court's injunction. When the students entered Plaintiff's office, he asserts that he made efforts to "redirect" them. Mot. 9. But ultimately, he allowed the students to access and read the books. Theis Decl. ¶¶ 81,

85. Plaintiff did not ask the students to leave his office or to put the books down so that he could remove the display. Instead, he allowed them to read them to each other and, during their second visit, engaged in a conversation with the students about the author. *See id.* at ¶ 88. This Court's Order was premised—in part—on Plaintiff's assertion that he controlled who had access to his office and that he could adjust the display accordingly. *See* Op. & Order 19 (noting that Plaintiff's LGMS office had a "Staff Only" sign and that "there is no identified risk that parents or students could enter the office without him present and view the display"); *see also* Compl. ¶ 71 ("[S]tudents and parents may not and do not enter Plaintiff's LGMS office, except when students visit under his direct supervision during evaluations or testing."). But Plaintiff failed to exercise control over access to his space after the students entered, and he facilitated the students' continued access to the books after they entered.[6] This conduct was outside the scope of the preliminary injunction.

This is not to suggest that the students' initial, unauthorized viewing of the books violated the injunction. Had Plaintiff simply redirected the involved students, or removed the books from view when they entered, then his conduct would have at least been protected under the spirit of this Court's Injunction. *See Inst. of Cetacean Rsch*, 774 F.3d at 949 (explaining that courts can "find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded"). But as discussed, Plaintiff's conduct here was not limited to that of a bystander as students briefly, and without authorization, entered his office. Rather, he

---

[6] This Court is concerned by Plaintiff's assertion that these incidents were a "setup" orchestrated by a LGMS teacher. *See* Mot. 1, 7. If that assertion is correct, it was a reprehensible decision and one that was designed to manufacture an encounter that would circumvent the terms of this Court's injunction. But even if this was a "setup," Plaintiff remained in control of his office and affirmatively facilitated Student's access to the books. And this Court must focus on the conduct of the parties in this action—and not that of a non-party teacher whose motives are likely in dispute.

9 – OPINION & ORDER

allowed the students to remain, read the books, and discussed the author with the students. By allowing students to view, gain access to, and—more importantly—to continue accessing the books, Plaintiff's conduct was outside that which was protected under this Court's injunction.

At the very least, Plaintiff cannot demonstrate—by clear and convincing evidence—that IMESD's pending disciplinary actions violate this Court's Order enjoining Defendants from disciplining Plaintiff for displaying the books while the children that he serves are not present in those office spaces. For that reason, Plaintiff's Motion is denied.

**II.     As established in the prior Order, Plaintiff does not have a First Amendment right to display the books to students.**

This Court will also address Plaintiff's broader, underlying argument that his conduct was protected by the First Amendment.[7] Here, as in his Motion for a Preliminary Injunction, Plaintiff appears to argue that discussing the books with students falls outside of his job responsibilities and is therefore protected speech. *See* Mot. 11–13. This Court disagrees.

Plaintiff effectively seeks to widen the scope of the injunction—and the Court's underlying reasoning about when his speech was protected—by arguing that he was only barred from displaying the books to students that he is *actively* serving by administering tests or assessments. *Id.* at 12–13. But as this Court explained, "'teachers do not cease acting as teachers each time the bell rings or the conversation moves beyond the narrow topic of curricular instruction.'" Op. & Order 19 n.7 (quoting *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 967–68 (9th Cir. 2011)). And "[a]s such, there is no basis to distinguish between an employee's

---

[7] Plaintiff's Motion is resolved by the discussion above. But to the extent that Plaintiff's Motion asserts that the August incident with the students was protected by the First Amendment, this Court writes to clarify that it was not. And in any event, under this Court's reasoning in its prior Order, there is not a "serious question" on the merits of whether Plaintiff is likely to succeed on a First Amendment retaliation claim based on the August incident. *See Assurance Wireless USA, L.P. v. Renolds*, 100 F.4th 1024, 1031 (9th Cir. 2024).

10 – OPINION & ORDER

curricular and [non-curricular] speech, at least when that speech is directed to students in the course [of] the teacher's official duties." *Id.* (citing *Wood v. Florida Dep't of Educ.*, 142 F.4th 1286, 1292 (11th Cir. 2025)); *see also Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 529–31 (2022) (noting that Mr. Kennedy's "prayers were not delivered as an address to the team").

This Court rejects Plaintiff's argument that, because students were free to leave, they were not a "captive" audience, and he therefore was not speaking as a public employee. Mot. 12. That interpretation reads this Court's Order—and the case on which it was based, *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 778 (9th Cir. 2022)—too narrowly. When "the display can be reasonably viewed as being promoted by the school or as the efforts of an employee to press his particular views upon students," Op. & Order 19, that is speech as a public employee, *see also Dodge*, 56 F.4th at 778 (distinguishing between displaying a message on a personal item during a teachers-only training and taking advantage of one's position as a teacher to impart their views upon students' impressionable and captive minds). Here, Plaintiff displayed the books to students, allowed them to read the books, and engaged in a discussion about the author. This Court concludes that such conduct could reasonably be viewed as being promoted by the school or as the efforts of Plaintiff to press his views upon the students. Thus, he was speaking as a public employee, and his speech was not protected by the First Amendment.

Plaintiff's argument that this Court "approvingly note[d]" that Plaintiff planned to supervise any inquiries about the books, Reply 4, is similarly mistaken. The cited excerpt is from this Court's recitation and application of facts to determine Plaintiff's official responsibilities and duties. *See* Op. & Order 18. This Court did not endorse Plaintiff's past discussion of *Johnny the Walrus* as an example of protected speech. Rather, it did so to highlight that Plaintiff's display of the books when students are present leads to situations in which students would want to interact

11 – OPINION & ORDER

with those books, and students could reasonably believe that they were being promoted by the school. Indeed, the paragraph "conclude[d] that Plaintiff spoke as an IMESD employee when he displayed the books while students were present." *Id.* at 19.

In sum, this Court reiterates its prior conclusion that Plaintiff's display of the books when students are present is not protected under the First Amendment.

## CONCLUSION

Plaintiff's Motion to Enforce This Court's Preliminary Injunction [46] is DENIED.

IT IS SO ORDERED.

DATED this 12th day of December, 2025.

_____
ANDREW HALLMAN
United States Magistrate Judge